**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carley Anne Miller, | No. CV-18-02335-PHX-JAS |
| Plaintiff, | **ORDER** |
| v. | |
| Pacific Indemnity Co., et al., | |
| Defendants. | |

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment on Count One [Breach of Contract] (Doc. 48), Defendant's Motion to Bifurcate Case and Motion to Stay Discovery (Doc. 52), Plaintiff's Motion for Leave to Take Depositions of: Leah Lewandowski, Sue Broeker, Tamra Tank, and Heather Lindsay (Doc. 94), and Defendant's Motion for Protective Order prohibiting the previously requested depositions (Doc. 99). These motions are either fully briefed or the time to respond has expired.

**PROCEDURAL HISTORY**

On June 15, 2018, Plaintiff filed this action in the Superior Court of the State of Arizona in and for the County of Maricopa. (Doc. 1-3.) On July 25, 2018, Defendant removed the action to the United States District Court for the District of Arizona. (Doc. 1.) On September 5, 2018, Plaintiff filed the First Amended Complaint. (Doc. 16.) On October 12, 2018, Plaintiff filed a Motion for Partial Summary Judgment (Doc. 29), and this action was transferred to the Honorable James A. Soto. (Doc. 31.) On October 16, 2018, Plaintiff moved for leave to file a Second Amended Complaint. (Doc. 33.) On October 19, 2018,

Defendant filed the first motion to bifurcate. (Doc. 35.) On November 1, 2018, the parties filed a stipulation to allow Plaintiff to amend the First Amended Complaint. (Doc. 41.) On November 2, 2018, the Court granted the parties' stipulation and denied the previous motions as moot as the First Amended Complaint would now be treated as nonexistent. (Doc. 42.) The parties filed the present motions addressing the Second Amended Complaint. (Docs. 48, 52.)

**FACTS[1]**

On July 23, 2016, Plaintiff was involved in a utility task vehicle ("UTV") accident. She was a passenger on a UTV owned by Ira Cadwell and driven by Brandon Kolsky. Cadwell's employee, Travis Ehle, had taken the UTV to Happy Jack, Arizona, approximately two hours away from Cadwell's property, where others drove the UTV.

The UTV in question was insured under Cadwell's policy with Defendant at the relevant times. On July 28, 2016, Cadwell's insurance agent spoke with the insurance company. The company informed the agent that if the UTV was reported stolen the company would pay for damages and the driver would be responsible for the damages and the claim would not be charged against his policy.[2] On August 23, 2016, Cadwell reported

---

[1] Facts in a summary judgment motion must be supported by citation to the record to material that can be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c). It is only relevant if the contents of the item cited are admissible and not if the actual item cited is admissible. *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). The burden to show admissibility rests on the party attempting to rely on the evidence. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385 (9th Cir. 2010). Defendant objects to the statements of Mr. Kolsky, Ms. Miller, and Detective Melton based on lack of proper authentication. (Doc. 75.) Depositions require that "[t]he officer must certify in writing that the witness was duly sworn and that the deposition accurately records the witness's testimony." Fed. R. Civ. P. 30(f)(1). Plaintiff amended the record to include that the witness was sworn but did not include a certification that the deposition accurately records the witness's testimony as required for authentication. (Doc. 84.) Defendant also objected to the statement by Mr. Ehle as it is unsworn. (Doc. 75.) Plaintiff did not respond to this argument. (Docs. 83, 84.) The Court may consider unsworn statements if they were made under the penalty of perjury. Fed. R. Civ. P. 56 Advisory Committee Note to 2010 Amendment (citing to 28 U.S.C. § 1746). Plaintiff failed to carry the burden that Mr. Ehle's statement or the depositions of Mr. Kolsky, Ms. Miller, and Detective Melton are appropriate for the Court's consideration as presented.

[2] Defendant object to the underlying document as lacking foundation and hearsay. (Doc. 74.) The statement within the document is not hearsay as it is not admitted for the truth of the matter asserted, but instead is being admitted to show the effect on Cadwell. To the extent Defendant was arguing that the document itself was hearsay, the Court believes that it is a business record under Rule 803(6). The foundation for the document is unclear. The Court understands that the author of the note is the person who spoke with Cadwell's agent

that Ehle stole the UTV sometime prior to the accident.[3] He informed the police that he possessed a recording of Ehle admitting that Ehle did not have permission to take the UTV. On September 15, 2016, Phoenix Police Department filed a supplemental report noting that the case may be a civil matter and that Cadwell had been unable to produce the recording of Ehle.

The policy excluded coverage for nonpermissive use, stating "We do not cover any person who uses a covered vehicle without permission from you or a family member."

The insurance company denied that Cadwell was liable for Plaintiff's injuries as the UTV was stolen at the time in question. In February 2017, Plaintiff sued Kolsky and the driver of the other UTV involved in the accident in Arizona state court. Kolsky tendered his defense to Defendant. Defendant denied responsibility for coverage or defense. In an email to Defendant, Kolsky's counsel expressed that the facts indicated that the UTV was not stolen, but instead that the vehicle was used with implied permission, and that Defendant's actions may result in a bad faith suit. Kolsky entered into an agreement with Plaintiff, in which he assigned his rights, claims, and causes of actions against Defendant to Plaintiff.

**ANALYSIS**

*<u>Motion for Partial Summary Judgment</u>*

*<u>Standard of Review</u>*

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant meets its initial responsibility, the burden shifts to the nonmovant to

---

based on the subsequent pleadings. The Court will consider this document.
[3] Plaintiff questions the sincerity of the policy report. However, the underlying documents that Plaintiff utilizes were not authenticated. Even if the Court were to consider the document, Defendant has presented conflicting evidence.

demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id*. at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

*Breach of Contract*

A breach of contract claim under Arizona law requires plaintiff to show three elements: "(1) a contract exists between the plaintiff and the defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to the plaintiff." *Nerdig v. Elec. Ins. Co.*, No. CV-17-01859-PHX-GMS, 2018 WL 4184926, at *3 (D. Ariz. Aug. 31, 2018). Breaching an insurance contract generally "occurs when the insurer denies the insured the relevant coverage." *Nerdig*, No. CV-17-01859-PHX-GMS, 2018 WL 4184926, at *3 (quoting *Clark Equipment Co. v. Arizona Property and Cas. Ins. Guar. Fund*, 943 P.2d 793, 800 (Ariz. Ct. App. 1997)).

Arizona insurance law requires certain coverage independent of its express inclusion in the insurance contract. A.R.S. § 28-4009; *Universal Underwriters Ins. Co. v. State Auto. & Cas. Underwriters*, 493 P.2d 495, 496 (Ariz. 1972). This includes coverage over permissive users, both expressly and implicitly permitted. § 28-4009(A)(2). Plaintiff

does not argue that express permission was given. (Doc. 48 at 10.) The presumption that drivers of insured vehicles are servants or agents of the owners and that they are using the vehicle in furtherance of the owners' business vanishes when contradicting evidence is presented. *Universal*, 493 P.2d at 497. Implied permission "is usually shown by the practice of the parties over a period of time preceding the day upon which the insured vehicle was being used." *Id*. It usually "arises from a course of conduct involving a mutual acquiescence in, or a lack of objection to, a continued use of the [vehicle], signifying assent." *Id*. (internal quotation omitted). It "also exists if the driver 'reasonably believed' [he or] she was using the vehicle according to the permission granted by its owner." *McGee v. Zurich Am. Ins. Co.*, No. CV-17-04024-PHX-DGC, 2019 WL 1777313, at *2 (D. Ariz. Apr. 23, 2019); *see Stonington Ins. Co. v. McWilliams*, No. 1 CA-CV 09-0235, 2010 WL 2677119, at *3 (Ariz. Ct. App. July 6, 2010).

The facts as currently before the Court do not merit a summary judgment. First, the evidence presented is that Cadwell reported the UTV stolen. (Doc. 49 at ¶ 7.) Plaintiff questions the legitimacy of the report but does not present evidence that the court may consider to negate Cadwell's report.[4] Further, it does not strictly follow that if the UTV was not stolen there was implied permission. *McGee*, No. CV-17-04024-PHX-DGC, 2019 WL 1777313, at *3 ("[T]here is a difference between not prohibiting a practice and impliedly permitting it."). Any evidence presented that Cadwell allowed or knew that the UTV has been removed from his property and utilized on previous trips is disputed. (Doc. 76-1 at ¶ 10.) Plaintiff argues that the driver's implied permission flowed through the implied permission given to Ehle. (Doc. 48 at 13–15.) Ehle's permission is disputed. It is possible that the driver could have "reasonably believed" he had the owner's permission. However, Plaintiff did not present any facts in a form the Court could consider.[5] As Plaintiff has not shown that there was implied permission, it is not necessary to determine

---

[4] If the Court were to consider the stricken depositions, it would still find that this matter was not appropriate for summary judgment. The material facts as to Ehle's implied permission are in dispute and therefore are not appropriate for summary judgment.
[5] If the Court could consider the facts, they would be that a friend of the employee believed that the employee was so trusted that he was allowed to bring his employer's UTV to camping trips and allow strangers to drive them while intoxicated.

if there was substantial deviation from the permission.

As the Court finds that there are genuine disputes as to the material facts, Plaintiff's Motion for Partial Summary Judgment on Count One [Breach of Contract] (Doc. 48) will be denied.

### **_Motion to Bifurcate_**

Federal Rule of Civil Procedure 42(b) provides that a court may order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize" the court's time and resources. District courts possess broad discretion in a bifurcation determination. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (citing *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002)).

Similarly, district courts have wide discretion in controlling discovery. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Upon a finding of good cause, a district court may order discovery be limited or conducted in phases. Fed. R. Civ. P. 26(f)(B); *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981).

It is the movant's burden to show that bifurcation or a stay is justified. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules [movants] were required to carry a heavy burden of showing why discovery was denied."); *Arizona v. ASARCO*, No. CV-08-441-TUC-DCB, 2011 WL 13185802, at *1 (D. Ariz. Jan. 11, 2011) ("The party requesting an order for separate trials has the burden . . . .").

### *Efficiency*

Bifurcated discovery would only be appropriate if the breach of contract claim would be resolved through motions or the Court found that two trials would be appropriate. Plaintiff's breach of contract claim does not appear appropriate for summary judgment as the parties have shown that the material facts are in dispute. The Court does not believe that the potential of two trials would be efficient or expedient as it would require two jury selections, two jury panels, and two separate juries, this does not include the Court resources that would be spent preparing for two trials and clearing other business from the

Court's calendar.

*Prejudice*

Defendant asserts that the jury may misunderstand or be confused without bifurcation. (Doc. 52 at 6:10-26.) The Court starts with the assumption that jurors are competent and able to obey jury instructions. *Arizona v. Prince*, 250 P.3d 1145, 1166 (Ariz. 2011) (en banc). The Court further believes that the jury would be able to focus on the relevant questions. Further, any prejudice must be weighed against the increased time and expense of preparing two separate jury trials, empaneling two juries, and undergoing two separate jury trials. The Court believes that this cost and time can be prevented with careful and thoughtful jury instructions. Defendant failed to carry its burden to show that bifurcation is necessary to prevent confusion to the jury.

Defendant also argues that not bifurcating will result in numerous discovery disputes. (Doc. 52 at 5–6.) The Court disagrees. If the Court bifurcates, then it is likely that the same disputes will need to be handled later, or that new disputes about what discovery is appropriate during the "first phase" will arise. Further, the Court has faith in its and the parties' ability to handle discovery disputes.

Defendant has failed to carry its burden and Defendant's Motion to Bifurcate Case and Motion to Stay Discovery (Doc. 52) will be denied.

***Motion for Leave to Take Depositions***

Plaintiff is requesting Leave to Take Depositions of: Leah Lewandowski, Sue Broeker, Tamra Tank, and Heather Lindsay. These individuals are current or former employees of Defendant, who worked or are working on the UTV claims. Ms. Lewandowski is the current liability claims adjuster. Ms. Broeker, Ms. Tank, and Ms. Lindsay worked or are working on the property damage claims related to the UTV and not the liability claims.

Rule 26 of the Federal Rules of Civil Procedure provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" if such discovery is proportional to the needs of the case. FED. R. CIV. P. 26(b)(1).

Rule 26(b)(1) explains several factors for considering proportionality, such as "the importance of the issues at stake in the action, the amount in controversy, the resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

*Leah Lewandowski*

Ms. Lewandowski was assigned to Cadwell's liability claims over a year after they were made and approximately two weeks prior to this lawsuit being filed. Plaintiff argues that Ms. Lewandowski has relevant information regarding how the claims were processed and determined.

Defendant argues that Ms. Lewandowski has limited relevant information and her testimony would be cumulative with the adjuster she replaced, who denied the liability claims. Plaintiff argues that as Defendant has a continuing duty of good faith and dealing extending beyond the filing of this lawsuit, the testimony would not be cumulative. Plaintiff has amended her complaint twice. (Docs. 16, 44.) The Second Amended Complaint specifically states, "That without reasonably investigating, Defendant, through its representative, Laurie Johnson, on more than one occasion denied coverage under said policy of insurance, denied any obligation to defend or indemnify Kolsky or provide any benefit as called for under the policy of insurance." (Doc. 44 at ¶ 16.) Plaintiff points to a letter by Ms. Lewandowski dated January 29, 2019, which addresses Defendant's denial of coverage and defense in *Bishop v. Kolsky*, CV-2018-009626, *Bishop v. Kolsky*, CV-2018-052807, *Wickstrom v. Kolsky*, CV-2018-055086. These claims are not mentioned in the Second Amended Complaint. (Doc. 44.) Accordingly, it does not appear that Ms. Lewandowski could add information as to the denial of the relevant claims. Ms. Lewandowski's testimony would be cumulative in this action. Plaintiff has not alleged that breaches occurred after Ms. Lewandowski was assigned to the relevant claims.

Defendant also argues that Ms. Lewandowski's testimony is protected under work-product doctrine. Plaintiff argues that any work-product privilege is overcome by Plaintiff's substantial need for the information and her inability to discover the information

elsewhere. As discussed above, the relevant information appears to surround the time when Ms. Johnson was the claims adjuster. Therefore, Plaintiff could obtain the information from a source other than Ms. Lewandowski. Accordingly, The Court will not grant leave to depose Ms. Lewandowski at this time.

*Property Damage Adjusters*

Plaintiff argues that these adjusters are relevant because both the liability and property claims are part of the same file, which results in adjusters for the liability claims relying on the property adjusters' work. Defendant has agreed to produce the original liability adjuster, Laurie Johnson, for a deposition. Ms. Johnson will possess the relevant information regarding what information she considered in reaching the denial. Absent information that Ms. Johnson relied on the adjusters' notes and information, the testimony would not be relevant or proportional. Further, Plaintiff argues that the property adjusters know the organization of the claims file, and the standard practices for handling losses. This second argument is unconvincing as other individuals that Plaintiff has either deposed or noticed also know that information, which would result in cumulative testimony. The Court will not grant leave to depose Ms. Broeker and Ms. Tank at this time.

Plaintiff names Ms. Lindsay in her argument as to why the property damage adjusters should be deposed. Specifically, Plaintiff argues that because Ms. Lindsay spoke with Cadwell's representative and advised him that if the insured filed a police report that the driver would be responsible for the damages, her testimony is relevant to the bad faith claim. Plaintiff alleges that this was a "*post hoc* scheme to escape liability coverage." (Doc. 94 at 8.) Defendant characterizes this theory as "rank speculation." (Doc. 99 at 3.) Ms. Lindsay may have relevant, non-privileged information. The Court will grant leave to depose Ms. Lindsay.

**CONCLUSION**

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Count One [Breach of Contract] (Doc. 48) is denied.

**IT IS FURTHER ORDERED** that Defendant's Motion to Bifurcate Case and

Motion to Stay Discovery (Doc. 52) is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Take Depositions of: Leah Lewandowski, Sue Broeker, Tamra Tank, and Heather Lindsay (Doc. 94) is granted, in part, and denied, in part, in accordance with this written Order. Plaintiff is permitted to depose Heather Lindsay. Plaintiff is not permitted to depose Leah Lewandowski, Sue Broeker, or Tamra Tank.

**IT IS FURTHER ORDERED** that Defendant's Motion for Protective Order (Doc. 99) is denied as MOOT, as the Court has addressed Plaintiff's motion to take depositions.

Dated this 31st day of May, 2019.

Honorable James A. Soto
United States District Judge